UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IRINA YESINA

        Plaintiff,

  - against -

UNITED STATES OF AMERICA

        Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
11-CV-6349 (RRM)(VMS)

ROSLYNN R. MAUSKOPF, United States District Judge:

      Plaintiff Irina Yesina brings this action against the United States of America for monetary relief arising out of the USA's alleged negligence in supervising, maintaining, inspecting, repairing, or otherwise controlling the operation of the Ferris wheel at Floyd Bennett Field, a recreational facility located within the National Park System.  Presently before the Court is the United States' motion to dismiss Yesina's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  (Doc. No. 10.)  Yesina opposed the motion (Doc. No. 9), to which the United States replied (Doc. No. 13.)[1]  For the following reasons, the United States' motion is granted.

---

[1] To the extent Yesina seeks additional discovery, her request is denied for the reasons stated in the Court's Order dated November 7, 2012 (Doc. No. 8.)

1

## BACKGROUND[2]

Floyd Bennett Field ("FBF") is located in Brooklyn, NY. FBF is part of the Gateway National Recreation Area ("Gateway"). Gateway, in turn, is a unit of the National Park System. The National Park System is administered by the National Park Service ("Park Service"), a division of the United States Department of Interior. (Finley Decl. (Doc. No. 11) ¶ 2.)

The United States, acting through the Park Service, contracted with Arklow-FBF, LLC, d/b/a Aviator Sports and Recreation Center ("Aviator") on or about December 31, 2008 for Aviator to manage and operate recreational facilities at FBF. (*Id*. ¶ 3.) As part of Aviator's duties, the contract allocated day-to-day management and responsibility over the hiring, training, managing and monitoring of its employees to Aviator. (*See* Ex. 1 to Finley Decl. (Doc. No. 11-1) (the "Contract") at US21-22.) The Contract requires Aviator to provide all personnel necessary to operating FBF. (*Id*. at US21.) It requires Aviator to establish screening, hiring, training, employment, and termination policies. (*Id*. at US22.) It requires Aviator to "review the conduct of any of its employees whose action or activities are considered . . . inconsistent with the proper administration of [the Contract] and . . . take such actions as are necessary to correct the situation." (*Id*.) It also requires Aviator to hire a "lead manager" who is responsible for "carrying out the terms of this Contract." (*Id*. at US52.)

The Contract also assigned Aviator responsibility to maintain the facilities at FBF. The Contract provides that Aviator "shall be solely responsible for maintenance, repairs,

---

[2] The following background is derived from Yesina's complaint and the declaration of John Finley, a business management specialist with the National Park Service who is familiar with Floyd Bennett Field, and the exhibits attached thereto, and the declaration of James Cho, counsel for the United States, and the exhibits attached thereto. The Court's consideration of materials outside of the complaint does not turn the United States' motion into one for summary judgment. "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Ireland v. Suffolk County of New York*, 242 F. Supp. 2d 178, 185 (E.D.N.Y. 2003) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), 'evidentiary matter may be presented by affidavit or otherwise.'") (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

housekeeping, and groundskeeping for all Concession Facilities . . . ." (*Id*. at US31.) The Contract required the Park Service to "undertake appropriate inspections." (*Id*.) John Finley, the Business Management Specialist at Gateway, inspected FBF approximately four times a year. (Finley Decl. ¶¶ 1, 19.)

Ensuring safety was the responsibility of Aviator under the Contract. The Contract requires Aviator to "address all aspects of personal safety and protection of property." (Contract at US64.) It also states that "Concession-operated facilities will be patrolled 7 days per week and 24 hours per day either by Concession employees or bonded guard service in order to secure government, concessioner and visitor property from theft, vandalism and fire." (*Id*.) Aviator was also responsible for designing a safety and security plan, to be reviewed by the Park Service on an annual basis. (*Id*.)

Aviator agreed in the Contract to "assume liability for and . . . to save, hold harmless, protect, defend, and indemnify the United States of America . . . from and against any and all liabilities, obligations, losses, damages or judgments . . . claims, actions, suits, costs and expenses . . . of any kind and nature whatsoever . . . ." (Contract at US34.) The Contract required Aviator to obtain and maintain insurance necessary to fulfill its obligations under the Contract at its sole expense. (*Id*. at US35.)

Under the Contract, Aviator may hold special events at FBF, without the advance approval of the Park Service. (*Id*. at US59.) Security requirements for special events are to be determined by Aviator, in consultation with the Park Service. (*Id*. at 64-66.) The Park Service participates in ensuring safety at special events; the Contract required Park Service police to patrol FBF during these events. (Contract at US64-66.) One such special event was the Kings County Fair, held between May 19 and May 30, 2011. (Finley Decl. ¶ 8.) Aviator subcontracted

3

with Reithoffer Shows, Inc. ("Reithoffer") to manage and operate amusement rides at the Fair, including the Ferris wheel.  (Ex. 3 to Finley Decl. (Doc. 11-3) ¶ 3.)

As she alleges in her complaint, on May 22, 2011, during the fair, Yesina was riding the Ferris wheel at FBF.  (Compl. ¶ 18.)  The Ferris wheel stopped and remained stopped at the highest point, allegedly causing Yesina "serious and permanent injuries."  (*Id.* ¶ 19.)  Yesina also claims to have suffered "pain, shock and mental anguish."  (*Id.* ¶ 24.)  An incident report completed by Aviator described Yesina and her daughter being "cold and upset of the response time for the rescue."  (Ex. 7 to Finley Decl. (Doc. 11-7).)  Yesina and her daughter denied medical attention.  (*Id.*)

Yesina filed a claim for damages with the Park Service.  (Ex. 6 to Finley Decl. (Doc. 11-6).)  Her claim form states that she and her daughter suffered "psychological injuries, stress, shock and mental anguish" when the Ferris wheel stopped.  (*Id.*)  The Park Service denied her claim on November 18, 2011 on the grounds that the United States was not liable for the alleged negligence of its contractors.  (Ex. 3 to Cho Decl. (Doc. 12-3) at US141.)

Yesina also filed a complaint in state court against Aviator and Reithoffer on August 25, 2011.  That complaint alleges that Aviator and Reithoffer had a duty to maintain FBF and the attractions at FBF "in a reasonably safe condition."  (Ex. 1 to Cho Decl. (Doc. 12-1) at ¶¶ 41, 43.)  The state court complaint also alleges that the negligence of Aviator and Reithoffer caused Yesina's injuries.  (*Id.* ¶ 46.)  The state complaint does not make any allegations about the Park Service's involvement in the incident.

Yesina filed the instant federal complaint on December 30, 2011.

## DISCUSSION

A. <u>Standard of Review</u>

A case must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. The Court will assume as true the factual allegations contained in the complaint, but will not draw jurisdictional inferences in favor of the plaintiff. *Fraser v. United States*, 490 F. Supp. 2d 302, 307 (E.D.N.Y. 2007) (citations omitted). "The plaintiff bears the burden of proving by a preponderance of the evidence that the court retains jurisdiction." *Id*. (citation omitted). Where, as here, the plaintiff's claim implicates the Federal Tort Claims Act ("FTCA"), she must "prove the statutory requirements under the FTCA by a preponderance of the evidence." *Id*. (citation omitted). "'Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States.'" *Fraser*, 490 F. Supp. 2d at 309 (citing *Moreno v. United States*, 965 F. Supp. 521, 524 (S.D.N.Y.1997)).

B. <u>FTCA</u>

Generally, the United States is immune from suit unless it consents to be sued, "'and the terms of its consent to be sued define the court's jurisdiction to entertain the suit.'" *Fraser*, 490 F. Supp. 2d at 309 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The FTCA creates a limited waiver of sovereign immunity. It permits the United States to be held liable "'to the same extent as a private person" for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .'" *Fraser*, 490 F. Supp. 2d at 309 (quoting 28 U.S.C. § 1346(b) and *Leone v. United States*, 910 F.2d 46, 48 (2d Cir. 1990)). An

"employee of the Government" is defined as "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity . . . ." 28 U.S.C. § 2671. The definition of "federal agency," in turn, specifically excludes "any contractor with the United States." *Id.* Thus, as a general rule, the FTCA "precludes suits against the United States for injuries caused by its independent contractors." *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997).

    C.  Independent Contractor Exception

The United States argues that it is not liable for Yesina's injuries because they were caused by Aviator, an independent contractor of the United States. Whether an entity is an independent contractor of the United States or its employee is determined by looking at the terms of the contract between the two to discern whether the United States "controlled the detailed physical performance of the contractor or whether the Government supervised the day-to-day operations of the contractor." *Fraser*, 490 F. Supp. 2d at 310 (citation omitted); *see also Roditis*, 122 F.3d at 111 (noting that whether the United States controlled the detailed physical performance of the entity or supervised its day-to-day operations determined whether the entity was an independent contractor under the FTCA).

In her opposition to the motion, Yesina concedes that Aviator is an independent contractor. She states that she "does not dispute that Aviator is an independent contractor . . . ." (Pl.'s Memo. in Opp'n at 2.) Nor is she "attempting to hold the government responsible for the acts or omission of either Aviator or Reithoffer." (*Id.*) Rather, Yesina argues that the Park Service breached its duty to her by failing to "be on the grounds, daily." (*Id.*) She also argues that the Park Service was negligent in supervising the work of Aviator and in performing its inspections of FBF. (*See id.*)

6

Yesina's argument fails.  Looking at the terms of the Contract, as this Court is required to do, it is clear that the Park Service owed no duty directly to Yesina.  The acts which Yesina complains of—failing to inspect and "be on the grounds"—are tasks largely delegated to Aviator under the Contract.  The Contract makes Aviator "solely responsible" for maintenance and repairs of FBF and its facilities.  (Contract at US31.)  Aviator was obligated to "address all aspects of personal safety."  (*Id*. at US64.)  The fact that the Park Service conducted periodic inspections of the grounds and supervised Aviator to some extent in its carrying out of the Contract does not save Yesina's complaint.  *See Leone*, 910 F.2d at 50 (where Government acts "generally as an overseer," no liability pursuant to the FTCA jurisdiction); *O'Neill v. United States*, 927 F. Supp. 599, 606-07 (E.D.N.Y.1996) ("[N]either the retention of the right to inspect the contractor's work, nor the power to control a contractor's compliance with the contract's specifications, is sufficient to convert the contractor's status from an independent contractor to an agent of the Government for the purposes of [the FTCA]."); *Moreno v. United States*, 965 F. Supp. 521, 525 (S.D.N.Y. 1997) (the United States' broad supervisory role is "insufficient to confer liability pursuant to the FTCA").

The cases Yesina cites to support her arguments, *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) and *Caraballo v. United States*, 830 F.2d 19 (2d Cir. 1987), are inapplicable because they do not involve an entity with which the United States contracted.  *Coulthurst* involved the United States' duty to inspect facilities where it had not contracted with any third party to maintain or manage those facilities.  The same is true of *Caraballo*.  These cases do not shed light on the United States' duties toward a plaintiff using its facilities when an independent contractor maintains, manages, and operates those facilities.

7

Moreover, Yesina's reliance upon Finley's deposition testimony in an unrelated action filed in this Court, *Svetnikova v. United States*, No. 10-CV-3457, is unfounded. Yesina points to this testimony to show the depth of the Park Service's involvement in the day-to-day management of facilities at FBF. Finley's testimony does not evoke detailed, day-to-day involvement in the running of FBF. Rather, it generally states that which the Contract already makes clear: the Park Service is involved in supervising Aviator's performance of the Contract and inspects the facilities at FBF periodically. (*See generally* Ex. A to Supp. Cho Decl. (Doc 13-1); Pl.'s Br. in Opp'n at 5-6.) As noted above, these facts do not save Yesina's complaint.

The Contract makes clear that the Park Service did not control the detailed physical performance of the contractor or supervise Aviator's day-to-day operations. *See Fraser*, 490 F. Supp. 2d at 310 (citation omitted). Thus, Aviator is an independent contractor of the United States, and the United States cannot be held liable for its alleged negligence.

D. <u>Discretionary Function Exception</u>

Moreover, the discretionary function exception under the FTCA bars Yesina's complaint. The FTCA maintains the United States' sovereign immunity over acts which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or due on the part of a federal agency or any employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Park Services' supervision of Aviator—part and parcel of which is its periodic inspections of FBF—falls within the discretionary function exception because the decision to supervise Aviator and periodically inspect the premises, when the Contract delegates day-to-day management and safety to Aviator, "was a policy decision precisely of the type the discretionary function exception is intended to protect." *Moreno*, 965 F. Supp. at 526 (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S.

8

797, 819-20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind.")); *see also Shivcharan v. United States*, No. 04-CV-1296, 2005 WL 408046, at *2 (E.D.N.Y. Feb. 15, 2005) ("[T]he United States cannot be held liable for the selection and supervision of independent contractors, because the selection and supervision of independent contractors is a discretionary function."); *Berghoff v. United States*, 737 F. Supp. 199, 204-05 (S.D.N.Y. 1989) ("[T]he United States' decision regarding the extent to which it would supervise [the contractor's] safety precautions is discretionary, and . . . cannot form the basis for a claim."). The discretionary function exception precludes Yesina from challenging the manner—*i.e.*, the periodic inspections—in which the Park Service supervised Aviator's performance of the Contract. *See Moreno*, 965 F. Supp. at 527. "In sum, the method and extent of supervision of an independent contractor is within the sound discretion of the Government." *Id.* For these reasons, Yesina's complaint must be dismissed.

Finally, to the extent that Yesina asserts a claim for negligent supervision of Aviator, the claim must also be dismissed. The discretionary function exception also precludes holding the United States liable on a theory of negligent supervision. *See Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp. 57, 64 (S.D.N.Y. 2005) ("[B]ecause of the discretionary function exception to the FTCA, the court lacked jurisdiction to hold the Government liable for any negligent delegation of responsibility . . . or negligent supervision."); *Burke v. United States*, No. 96-CV-2470, 1996 WL 671151, at *2 (S.D.N.Y. Nov. 19, 1996) (same). Thus, Yesina's Complaint must be dismissed.

9

## CONCLUSION

For the foregoing reasons, the Court grants the United States' motion to dismiss and Yesina's Complaint is dismissed with prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
December 27, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge